Case #: 3:26MJ5200

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Chandler P. Cole, being first duly sworn, hereby depose and state the following:

1.      I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been so since February 2023. I am currently assigned to the Cleveland Division, Lima Resident Agency. I worked in a similar capacity in the Chicago Division. I have investigated the commission of federal crimes involving criminal offenses and national security matters to include counterintelligence investigations, counterterrorism investigations, violent crimes, crimes against children, financial crimes, and drug trafficking. Prior to employment with the FBI, I worked in a law enforcement capacity for four years investigating white collar crime and violent crime against individuals with developmental disabilities and the elderly for the Ohio Attorney General. In the course of these duties, I have participated in numerous state and federal search and arrest operations and conducted associated interviews which have resulted in the collection of evidence and admissions of multiple criminal violations.

2.      This affidavit is in support of a criminal complaint against CRYSTAL GAIL CISCO. My knowledge of this investigation is based upon my own personal observations, as well as the observations and investigations conducted by other law enforcement officers, including members of the Northwest Ohio Safe Streets Task Force.

3.      Because this affidavit is being submitted for the limited purpose of supporting a criminal complaint, I have not included every fact known concerning this investigation. I have set forth only the facts I believe necessary to establish probable cause that CISCO has committed a violation of Title 18 U.S.C. § 1951(a) - Interference with Commerce by Means of Extortion, 18 U.S.C. § 875(d) - Interstate Communications with Intent to Extort, and 18 U.S.C. § 880 - Receiving the Proceeds of Extortion.

1

Case #: 3:26MJ5200

4.      On April 30, 2026, your Affiant received a call from Detective Kayla Rayl of the Allen County Sheriff's Office (ACSO) regarding a possible extortion. Detective Rayl explained CISCO extorted Victim #1, Victim #2, and their daughter Victim #3 for $85,000.00.

5.      According to Detective Rayl, on April 20, 2026, Victim #1 and Victim #2 contacted ACSO and explained they believed they were being exploited by CISCO and her family. CISCO was hired as a peer support person for Victim #3, a twenty-eight-year-old with autism. On April 12, 2026, CISCO contacted Victim #2 and Victim #1 stating that she had received information Victim #3 was involved in the production of a sexually explicit video. CISCO said she received this information from L.M., Victim #3's previous peer support person. CISCO said L.M. was informed of the existence of this video by her sister, H.M. CISCO told Victim #1 and Victim #2 she would handle the situation, and they had nothing to worry about.

6.      On April 16, 2026, CISCO sent Victim #1 an email with subject line "Urgent: Safety and Harassment Concern" saying they were being blackmailed by L.M. who was requesting $185,000.00 by April 18, 2026, or else she (L.M.) was going to post videos of Victim #3 engaging in sexual intercourse. CISCO told Victim #1 to not contact L.M. directly, and that CISCO's brother "Fransico" had already wired the requested money to the "bums." Victim #1 began receiving messages from 702-841-7079 and was told it was "Fransico".

7.      "Fransico" demanded Victim #1 give CISCO a card with a check for $85,000.00 on May 2, 2026, in later contact the date was changed to April 21, 2026.  Further correspondence made demands which included a new phone, SIM card, a residence for CISCO valued at $270,000.00 and a $25,000.00 vehicle for CISCO's daughter, C.N. Victim #1 also received three audio messages titled "Elevenlab001.amr" and was told they were audio recordings of Victim #3 engaging in sexual intercourse.

2

Case #: 3:26MJ5200

8.      On April 30, 2026, SA Cole and Detective Rayl spoke with Victim #1 and Victim #2. They said they had been in contact with CISCO. They stated CISCO had been Victim #3's life coach since March 2026 and was paid $4,000.00 a month if she worked part time and $8,000.00 a month if she worked full time. Victim #1 said she and Victim #2 paid CISCO the requested $85,000.00 and bought CISCO a new phone. Victim #1 and Victim #2 were visibly scared of "Fransico" and anyone else who was involved with the scheme. Victim #1 provided your Affiant with the messages sent to her from CISCO that were allegedly sent by L.M. Upon review of the messages, your Affiant believed they had been generated through artificial intelligence (AI) as well as the picture of Victim #3 with an unknown black male.

9.      Victim #1 provided a copy of a cashier's check from Huntington Back with check number 2019412540. The check was from Victim #2 to CISCO for $85,000.00 dated April 23, 2026. Victim #1 explained she met CISCO at Panera Bread located on Elida Road in Lima, OH on April 23, 2026, and gave her the check within a card and a business book. Victim #1 received three phones from CISCO and multiple SIM cards and was told by CISCO they were used by the people who had the video of Victim #3. CISCO told Victim #1 there were two hard drives that still had the video on it. CISCO also required Victim #1 to purchase her a new phone with case, (SM-S9848UZDAXAA) for $1,389.00.

10.      CISCO contacted Victim #1 multiple times via email on April 29, 2026, stating that she still needed $56,242.71 for a medical procedure. Victim #1 also received a text message from a different number (614-665-3149) claiming Victim #1 and Victim #2 needed to pay CISCO $56,242.71. The text message stated, "At this point, responsibility for resolving this matter rests with the xxxxxx [Victims'] family. It is important that this is handled promptly to

3

ensure closure and avoid any further inconveniences." Victim #1 provided a ledger of payments made to CISCO from March 15, 2026, to April 30, 2026. They are as follows:

- 3/13/26 $3000.00 Part time retainer

- 4/3/26 $6193.54 Mar-Apr

- 4/7/26 $12,000.00 May 1 – June 30 (May $4000.00, June $8000.00)

- 4/11/26 $3,000.00 Retainer for June – Aug

- 4/24/26 $85,000.00

- 4/28/26 $1,389.00 Phone

- Total paid so far $110,582.58

11.    Victim #1 provided your Affiant with a resignation from CISCO titled "termination letter" dated April 29, 2026, at 7:40 am. However, Victim #1 received an email from CISCO on April 29, 2026, stating, "I'm not sure what's happening, but I got a call stating I have an appointment with my family at the common pleas, what's this about? I believe I should step away. I have a meeting with Triglia, I'm not a part of anything the Mxxxx and Victims have done… I'm not being dragged into something I did not cause."

12.    Victim #1 provided your Affiant with two pictures of Victim #3 and an unknown black male. The first picture depicts the black male having his arm around Victim #3, the second picture depicts Victim #3 being kissed by the black male. Upon review, your Affiant believed these images to also be AI generated. Victim #1 had provided her phone to Detective Rayl prior to the meeting on April 30, 2026, to extract the conversations between Victim #1 and CISCO and 614-665-3149 and 702-841-7079. Your Affiant and Detective Rayl reviewed the files and noticed the messages that CISCO claimed to be sent to her by L.M. were titled "Fake_Chat.png."

4

Case #: 3:26MJ5200

13.     Based upon the above information, as well as my training and experience, your Affiant believed CISCO had extorted Victim #1 and Victim #2 and was responsible for the messages sent by phone numbers 614-665-3149 and 702-841-7079. Several messages from CISCO and text messages from phone numbers 614-665-3149 and 702-841-7079 each contained similar verbiage, including the phrases "move forward" and "moving forward." Additionally, any time the victims did not agree with terms set forth by CISCO, Victim #1 would receive messages from either 614-665-3149 or 702-841-7079 which demanded a payment.

14.     There were multiple messages between 614-665-3149 and Victim #1 on May 1, 2026, demanding Victim #1 pay CISCO anywhere between $44,242.77 and $56,242.71. After receiving these messages, Victim #1 spoke with your Affiant which led to establishing a plan involving Victim #1 meeting CISCO at the Panera Bread in Lima, OH and paying CISCO $44,242.77 in sham United States currency on May 4, 2026, at 9:00 am. After the plan was developed, Victim #1 received a message saying CISCO needed an additional $4,000.00 for a total of $48,242.77.

15.     On May 4, 2026, your Affiant provided Victim #1 with a sealed envelope of $50,000.00 in sham United States currency. Victim #1 contacted CISCO at roughly 8:50 am via telephone and confirmed the meeting at Panera Bread. Victim #1 was recording audio and video of the interaction and CISCO accepted the envelope. CISCO was taken into custody by law enforcement for probable cause of extortion at roughly 9:05 am. CISCO's immediate vicinity was searched, which resulted in the discovery of two cellphones.

16.     Your Affiant and SA Andrew Eilerman interviewed CISCO at the ACSO. The interview was audio and visually recorded. After being advised of her Miranda Rights, CISCO attempted to place blame on unnamed family members and that she had done everything she

could to walk away from her family. SA Eilerman confronted CISCO and explained it was time for CISCO to be honest. CISCO said she had a choice to meet [Victim #1] and she made the decision to go.

17.     CISCO explained that she made photos through Gemini AI of Victim #3 and a black male. CISCO created this image and made the demand for $85,000.00 from the victims. CISCO admitted to creating the phone numbers through voice over internet protocol application, TextNow and pretended to be "Fransico." The messages stated if the Victims did not pay CISCO $85,000.00, the pictures of Victim #3 would spread over town. CISCO stated that she wanted the money to pay off her debt which included student loan debt totaling $17,000.00 and a car loan totaling $18,000.00. CISCO also stated that she struggled to pay rent.

18.     CISCO used proceeds from the $85,000 paid by the Victims to purchase a $25,000.00 Honda CRV for her daughter, C.N., spent $14,000.00 on a surgery scheduled for May 11, 2026, deposited $10,000 into a CD at Fifth Third Bank, and used $4,000 to pay for her son's rent. Of the $85,000 paid by the Victims, approximately $41,000.00 remains in CISCO's personal savings account with Fifth Third Bank.

19.     CISCO said she was the only one involved and the Victims were not in danger. CISCO further stated that the money she requested to be paid on May 4, 2026, was intended to cover the $4,000.00 owed to her for her work as Victim #3's peer advocate for the month of May 2026. CISCO intended to use the remaining $44,242.77 to pay off her debt. CISCO stated that she had a ledger to keep track of her debt at her residence. Later in the interview, CISCO gave Agents consent to search her residence. During the subsequent search of her residence, law enforcement discovered the ledger as well as a receipt from the transaction involving the

Case #: 3:26MJ5200

$85,000.00 check being cashed, and the bag containing the card which was used to deliver the $85,000.00 check to CISCO.

20.    CISCO voluntarily provided your Affiant with the combination for her phone and signed a consent to search for her phones. An on-scene review of her phone by Agents, within the Gemini app, located the images of Victim #3 and the black male sent to Victim #1. As well as additional images with Victim #3 and the same black male in different settings and multiple others with another black male. There is also verbiage used to create these images within the Gemini app.

21.    Your Affiant asked CISCO what she intended to do with $44,242.77 and she changed her story from paying off debt to investing the money. CISCO stated that made the Victims believe that if they paid $44,242.77, it would stop the images from being posted and save the reputation of their last name. CISCO said she pretended to be "the family" to pressure the Victims to pay her. She also created an AI generated conversation between L.M. and herself to make it look like L.M. was extorting her. CISCO confirmed that L.M. and H.M. were not involved with the extortion scheme.

22.    The three audio messages that were sent to the Victims were created by CISCO's niece, J.N. CISCO stated that she told J.N. about the extortion plan and J.N. sent CISCO the audio messages which were later sent to the victims. CISCO stated that J.N. did not know the total amount being extorted from the Victims and that she was going to pay J.N. $1,500.00 for creating the audio messages. CISCO stated that she had these messages created to convince the Victims that audio existed of Victim #3 engaging in sexual intercourse. CISCO said no video was made, but she told the Victims that a video existed which depicted Victim #3 engaging in sex with a black male to get them to pay her the $85,000.00.

7

Case #: 3:26MJ5200

23.     CISCO confirmed the $85,000.00 and the $44,242.77 were specifically to pay her to not post the images of Victim #3 and the unknown black male and video she claimed to be in possession of. Throughout the interview, CISCO said on multiple occasions while being questioned about the extortion, "I fucked up", "I did it", and "it was me".

24.     Based on the information contained in this affidavit, I believed probable causes exists that, in the Northern District of Ohio, CRYSTAL GAIL CISCO, committed violations of Title 18 U.S.C. § 1951(a) - Interference with Commerce by Means of Extortion, 18 U.S.C. § 875(d) - Interstate Communications with Intent to Extort, and 18 U.S.C. § 880 - Receiving the Proceeds of Extortion.

Respectfully submitted,

Chandler P. Cole
Special Agent, FBI

May 5, 2026

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

8